# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KIT VANDEN HEUVEL,

       Plaintiff,

v.                                                            Case No. 07-CV-992

JAMES ZWICKY, MICHAEL MURPHY,
SHERI GRAEBER, MICHELE CRAWFORD,
MARY JO PLEUSS, and MRS. ZWICKY,

       Defendants.

# ORDER

The plaintiff, Kit Vanden Heuvel, is proceeding *in forma pauperis* on the following claims under 42 U.S.C. § 1983: (1) a First Amendment claim for conspiracy and retaliation against defendants Sgt. James Zwicky, Sheri Graeber, Michael Murphy, Mary Jo Pleuss, Michele Crawford, and Mrs. James Zwicky; (2) an Eighth Amendment claim against defendant Sgt. Zwicky; and (3) a Fourteenth Amendment due process claim against defendant Michele Crawford. Now before the court is the defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v.*

*Home Depot U.S.A., Inc.*, — F.3d —, 2010 WL 31855, at *3 (7th Cir. Jan. 6, 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTUAL BACKGROUND[1]

The Drug Abuse Corrections Center (DACC) is an institution operated by the Wisconsin Department of Corrections. At all times relevant to this case, the plaintiff

---

[1]The facts are taken from admissible and relevant evidence presented by the plaintiff and the defendants, including the plaintiff's response to the defendants' motion for summary judgment, the plaintiff's sworn amended complaint and the plaintiff's sworn declarations.

was a state prisoner. He arrived at the DACC on October 7, 2005, to participate in the Earned Release Program (ERP). However, a spot in the program was not immediately available so the plaintiff was assigned to various work details at or near DACC.

Around October 20, 2005, the plaintiff was part of a work crew being transported back to the institution in a van by defendant Sergeant James Zwicky. Sgt. Zwicky stopped to get gas for the van while the plaintiff was in the vehicle. Sgt. Zwicky found what he thought was a tobacco cigarette laying on the ground, picked it up, and threw it in a trash barrel. As he did that, several inmates jokingly asked Sgt. Zwicky about giving them a cigarette. Sgt. Zwicky reminded them that the DACC is a non-smoking institution and then he went inside to pay for the gas. Sgt. Zwicky avers that he never gave marijuana to the plaintiff or any other inmate. Nor did he ever give the plaintiff or any other inmate any kind of cigarette.

One of the inmates told Sgt. Zwicky later that the plaintiff had gotten out of the van and retrieved the cigarette, which turned out to contain marijuana. The inmate told Sgt. Zwicky that the plaintiff split the marijuana cigarette with another inmate in the van. Sgt. Zwicky reported this information to his Captain, who ordered an investigation. Sgt. Zwicky was not part of the investigation. According to the plaintiff's sworn complaint and his subsequent sworn declaration, the plaintiff did not smoke the marijuana and the results of a drug test the next day were negative.

On October 28, 2005, Sgt. Zwicky assisted Sergeant Linda Uecker in confronting a work crew whose members were smoking while working at Menominee Park. Smoking violated the rules at the DACC. Sgts. Uecker and Zwicky went to the park and approached three inmates who appeared to be smoking; the plaintiff was part of the group. Sgt. Zwicky conducted pat-down searches of all three inmates while Sgt. Uecker searched the golf cart the inmates had been using. Sgt. Uecker found tobacco products on the golf cart, and Sgt. Zwicky discovered additional tobacco products on the plaintiff's person. The sergeants notified Supervisor Mary Jo Pleuss about the incident, and she interviewed the plaintiff in their presence. The plaintiff admitted that he had been smoking while working in the park and that the contraband on the golf cart was his. Accordingly, Sgt. Zwicky issued the plaintiff a conduct report (No. 1577932) for possession of contraband and violation of institution rules. At a disciplinary hearing on the conduct report, the plaintiff admitted he was guilty and lost canteen privileges for two weeks. Sgt. Zwicky did not terminate the plaintiff from his work crew assignments. Nor did he have the authority to do so.

On November 22, 2005, Sgt. Zwicky observed a group of inmates walking on the track and smoking from his office window. He went outside and confronted the group, performed routine pat-down searches on all of the inmates, which included running his finger through the top of each inmate's waist band. One of the inmates in this group was the plaintiff. Sgt. Zwicky did not discover any cigarettes, but he

found a lighter in the plaintiff's coat pocket and could smell cigarette smoke on his person. The plaintiff told Sgt. Zwicky that the cigarette he smoked was the last one he had. Then, he changed his story and said that he was not smoking, but only had the lighter. Sgt. Zwicky issued the plaintiff another conduct report (No. 1664739) for possession of contraband and violation of institution rules.

The plaintiff avers that Sgt. Zwicky is lying. The plaintiff insists that Sgt. Zwicky singled him out and assaulted him and was watching only him walking the track. The plaintiff also swears that he was not wearing a jacket at the time. He affirms that he "suffered injuries to his genital area during an assault in which Sgt. Zwicky put his hands down the front of the plaintiff's pants" on November 22, 2005.

According to Sgt. Zwicky, the plaintiff did not indicate that he experienced any discomfort when Sgt. Zwicky conducted the pat-down. Sgt. Zwicky also avers that he never put his hands down the front of the plaintiff's pants. After the events on November 22, 2005, Sgt. Zwicky had no further contact with the plaintiff.[2]

On November 30, 2005, the plaintiff filed an inmate complaint, number DACC-2005-36526, alleging harassment by Sgt. Zwicky. The complaint was rejected because it related to a conduct report that had not yet been heard. The plaintiff was

---

[2]DACC Superintendent Sheri Graeber first learned of the plaintiff's allegations against Sgt. Zwicky when she received a packet of information regarding the plaintiff on August 8, 2006. At that time, she contacted the Oshkosh Police Department and made an appointment to report the allegations. Oshkosh Police Officer Mike Kirby reviewed the materials and determined that a sexual assault did not occur and no crime had been committed. An independent investigation was also conducted at the DACC, which confirmed that the plaintiff's allegations against Sgt. Zwicky regarding the marijuana and the assault were baseless. The plaintiff was issued a conduct report for lying and, after a full hearing, he was found guilty.

advised that he would have the opportunity to present evidence of the alleged harassment at his upcoming hearing on the conduct report.[3] However, at the hearing on Conduct Report Number 1664739, the plaintiff did not make any allegations or present any evidence that Sgt. Zwicky had given him marijuana, harassed him, or "assaulted" him by putting his hands down the plaintiff's pants. He admitted, "I'm guilty of the alleged charges," was found guilty and received three days of unit confinement.

The ERP is a voluntary program, and inmates agree to participate. Before beginning formal programming, the plaintiff signed an "Earned Release Program Memo of Agreement" and a "Drug Abuse Correctional Center Earned Release Program Contract." On February 27, 2006, defendants Supervisor Mary Jo Pleuss and Michele Crawford met with the plaintiff because he had received five separate conduct reports since arriving at the DACC. The plaintiff did not tell Supervisor Pleuss or Crawford that Sgt. Zwicky had given him marijuana or that Sgt. Zwicky "assaulted" the plaintiff.

The plaintiff did not do well in the ERP. He was in denial about his past offenses and his behavior, did not participate at an acceptable level and was disruptive. The plaintiff also displayed an ongoing pattern of denying his conduct and blaming other people instead.

---

[3]The plaintiff did not appeal the rejection of the complaint.

On March 13, 2006, the plaintiff informed Crawford that he had been in an altercation with another inmate that involved yelling, verbal threats, and profanity. As a result, Crawford held a Treatment Intervention with the plaintiff to address his inappropriate social skills and disruptive behavior.

On April 17, 2006, the plaintiff's group confronted the plaintiff about his intentional absences from group sessions. The plaintiff became defensive and immediately denied his actions and blamed other group members. Crawford scheduled the plaintiff for another Treatment Intervention. Crawford discussed the situation with Supervisor Pleuss, who decided to make the intervention a more formal "Staff Review" because the plaintiff had already had a Treatment Intervention and then intentionally skipped group.

The Staff Review was on April 18, 2006, and Crawford and the plaintiff discussed the plaintiff's problem behaviors. Crawford gave the plaintiff several written assignments to complete by April 24, 2006.

After either the March 13, 2006, or April 18, 2006 meeting, the plaintiff told Crawford that he believed he was being treated unfairly in the ERP because of an inmate complaint he filed against Sgt. Zwicky for planting marijuana on him. Crawford told the plaintiff that she did not know anything about his inmate complaint.

Crawford met with the plaintiff again on April 24, 2006, and his assignments were "barely acceptable." As a result, Crawford instructed the plaintiff to redo the assignments and present them at a group session. When the group met on April 27,

2006, the plaintiff continued to be extremely defensive, and he still assigned blame to everyone else. He made some effort, but he was unable to be consistent.

On May 1, 2006, the plaintiff read his assignments to the group. While doing so, he laughed and used humor in a very inappropriate way. Although the assignments were acceptable, Crawford told the plaintiff that he had to show, through his actions, that he truly had learned something from them. At group the next day, the plaintiff adamantly expressed his dislike for the no smoking rule and became defensive and angry.

When the group met on May 5, 2006, the other group members voted the plaintiff the "Biggest Gamer," which meant that he was playing games instead of taking the ERP seriously. The plaintiff again became defensive and accused the other group members. The plaintiff's behavior had become a primary focus of the group sessions. He was not following the rules, and the group sessions were all about him. He was a major disruption to the group and the other inmates' treatment. The plaintiff continued to insist that the staff and other inmates were "picking on him" or "out to get him."

On May 8, 2006, a member of the plaintiff's group told Crawford that he had seen the plaintiff smoking over the weekend. After the group member told the plaintiff that he would hold him accountable before the group if he saw him smoking again, the plaintiff approached the group member later that day, "got in his face," puffed up his chest, and said "you didn't see me smoking!" When Crawford

confronted the plaintiff about this situation, he once again denied everything and started making accusations against other group members. The plaintiff continued to deny everything when confronted by the group, and he called one group member a "pussy" because he was going to hold the plaintiff accountable for breaking the rules. This was the culmination of the plaintiff's unacceptable behavior, and Crawford contacted Supervisor Pleuss about terminating the plaintiff from the ERP.

On May 9, 2006, Crawford recommended the plaintiff's termination from the ERP, but she did not have the authority to terminate him. Only a supervisor can terminate an inmate from the program. Supervisor Pleuss made the decision to terminate the plaintiff based on his lack of progress in the ERP and his repeated program and institutional rule violations. When Crawford told the plaintiff he was being terminated, he became argumentative and claims that it was "not fair." Neither Crawford nor Supervisor Pleuss had any further contact with the plaintiff after he was terminated from the program.

The plaintiff avers that Crawford had him fired from his job because she assumed he was smoking cigarettes at a county park where smoking is allowed. The plaintiff also asserts that Crawford enjoyed harassing him during the ERP. He suggests that Crawford is lying about his disruption of the group and that other group members would support his version of events.

**DISCUSSION**

The defendants argue that they are entitled to summary judgment on all of the plaintiff's claims. As an initial matter, the defendants submit that the plaintiff cannot sue the defendants in their "official capacity" pursuant to 42 U.S.C. § 1983.[4] The defendants also contend that: (1) Sgt. Zwicky did not violate the plaintiff's Eighth Amendment rights when he searched the plaintiff on November 22, 2005; (2) Crawford did not violate the plaintiff's Fourteenth Amendment rights because she did not terminate him from his employment or the ERP and, in any event, he had no due process rights with respect to either; and (3) that there is no evidence that the defendants conspired and retaliated against the plaintiff due to his allegations regarding Sgt. Zwicky. Finally, the defendants assert that they are entitled to qualified immunity for their actions.

**I.   EIGHTH AMENDMENT**

The defendants contend that Sgt. Zwicky did not violate the plaintiff's Eighth Amendment rights during the pat down search of the plaintiff on November 22, 2005. The plaintiff does not respond to the defendants' arguments, other than to attach his sworn Amended Complaint.

"In the context of bodily searches performed upon those incarcerated in our prison system, only those searches that are maliciously motivated, unrelated to

---

[4] Although the court's screening order did not explicitly dismiss the plaintiff's claims against the defendants in their official capacities, the plaintiff was only allowed to proceed on claims against the defendants in their individual capacities.

institutional security, and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). Prison officials are certainly permitted to touch, pat down and search a prisoner in order to determine whether the prisoner is hiding anything dangerous on his person. *Id.* However, a search of a prisoner may violate the Eighth Amendment if it is "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. Detella*, 319 F.3d 936, 939 (7th Cir. 2003).

There is nothing in the record before this court to suggest that Sgt. Zwicky's search of the plaintiff on November 22, 2005, was conducted in a harassing manner or intended to humiliate and inflict psychological pain. Sgt. Zwicky avers that he conducted a routine pat down search that included running his finger through the top of each inmate's waist band. The plaintiff relies on the assertion in his Amended Complaint that he "suffered injuries to his genital area during an assault in which Sgt. Zwicky put his hands down the front of the plaintiff's pants." He does not elaborate or provide any additional details. Nor has he provided evidence of medical treatment for any injuries.

Although the plaintiff's assertions were sufficient to allow him to proceed on this claim, summary judgment is the "put up or shut up" moment in a case, when a party must show what evidence it has to prove its case to the trier of fact. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005). The plaintiff's general and conclusory allegations, without support in the record, do not create an

issue of fact that precludes summary judgment. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002).

Moreover, courts have found that isolated incidents of harassment, involving verbal harassment and touching, are not generally severe enough to be "objectively, sufficiently serious." *See Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998) (inmate failed to state an Eighth Amendment claim against prison maintenance employee where "the brief touch to his buttocks lasted mere seconds, [and] it was not accompanied by any sexual comments or banter"); *Boddie v. Schneider*, 105 F.3d 857 (2nd Cir. 1997) (holding allegations that a corrections officer touched an inmate's penis and pressed up against him in a sexual manner were not sufficient to state an Eighth Amendment claim because "isolated episodes of harassment and touching ... do not involve a harm of federal constitutional proportions as defined by the Supreme Court"). The court will grant the defendants' motion for summary judgment on this claim.

## II. DUE PROCESS

The plaintiff asserts that defendant Michele Crawford violated his right to due process when she terminated him from the ERP. However, Crawford submits that she was not personally involved in any deprivation. The plaintiff's claims arise under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or

> other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Since a § 1983 cause of action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). In order to be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

Crawford has presented admissible evidence, in the form of her affidavit, that she did not make the decision to terminate the plaintiff from the ERP. She also has shown that she did not have the authority to make that decision. Crawford's motion for summary judgment was properly made and supported. *See* Fed. R. Civ. P. 56(e). The plaintiff has failed to "set out specific facts showing a genuine issue for trial." *Id.* Thus, summary judgment will be granted in favor of Crawford on this claim.

Moreover, the plaintiff does not have any liberty interest in jobs or the earned release program. "There is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment." *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). This is true even when such successful participation "might" result

in early release from custody. For example, in *Higgason v. Farley*, 83 F.3d 807, 809-10 (7th Cir. 1996), the Seventh Circuit held that denying an inmate access to an educational program for which he would be eligible for good time credits did not infringe a protected liberty interest:

> According to *Sandin*, if "the State's action will inevitably affect the duration of [the] sentence," there is due process protection, but there is no such protection for action that merely might affect the duration of the sentence. *Sandin*, 515 U.S. at ___, 115 S.Ct. at 2302. Even if Higgason had been given the opportunity, it was not inevitable that he would complete an educational program and earn good time credits. They, denying the opportunity to earn credits did not "inevitably affect the duration of the sentence," and did not infringe on a protected liberty interest.

*Higgason*, 83 F.3d at 809-10. Even if the plaintiff had named as a defendant someone who was personally involved in the decision, he was not entitled to due process before being terminated from the ERP.

## III. RETALIATION

Finally, to prove retaliation, the plaintiff must show that a protected activity (in this case, filing an inmate complaint against defendant Sgt. Zwicky) was "at least a motivating factor" in any retaliatory action taken by the prison. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). If he can show that retaliatory animus was a factor, then the burden shifts to the defendants to prove that the same actions would have occurred in the absence of the protected conduct. *Spiegla v. Hull*, 471 F.3d 928, 943 (7th Cir. 2004) (citing *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The plaintiff presents no evidence that either his treatment at the DACC or his eventual termination from the ERP were motivated by his complaints against Sgt. Zwicky. The plaintiff speculates that he was harassed and punished in retaliation for his complaints, but mere speculation is not sufficient to stave off summary judgment. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 544 F.3d 752, 757 (7th Cir. 2008).

Even if the plaintiff had shown the prison officials were motivated by retaliatory purpose, the defendants amply demonstrate that they would have taken the same actions even if the plaintiff had never filed the grievance. The record reveals that the plaintiff was punished for admitted, legitimate infractions and that he ultimately was dismissed from the ERP for his failure to participate appropriately in the group and work on his treatment.

Because the defendants are entitled to summary judgment on the plaintiff's retaliation claim, the plaintiff's conspiracy claim must fail too because conspiracy is not an independent basis of liability in §1983 actions. *Lewis v. Washington*, 183 Fed. Appx. 553 (7th Cir. 2006) (unpublished). "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant(s) in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). Here,

where there was no violation of the plaintiff's constitutional rights, there could be no conspiracy to deprive the plaintiff of those rights.

## IV. QUALIFIED IMMUNITY

The court does not need to consider the defendants' qualified immunity argument because they have shown that they did not violate the plaintiff's constitutional rights. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001). It is within the court's discretion to determine the order in which it considers the two steps of the *Saucier* procedure to "best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S.Ct. 808, 821 (2009).

## V. ADDITIONAL DEFENDANTS

Finally, defendants Michael Murphy and Mrs. Zwicky were never served with the plaintiff's Amended Complaint. The plaintiff states in a declaration filed November 20, 2009, and docketed at document number 82, that he paid the U.S. Marshal to serve each defendant, but that it appeared defendant Michael Murphy had not been served. The U.S. Marshal was unable to serve Murphy because he was no longer employed at DACC and DACC had no forwarding address for him. Similarly, although Mrs. Zwicky was identified as working for the Oshkosh Police Department, there was no record of a Zwicky ever having worked for the City of Oshkosh. Both of their waivers of service were returned unexecuted. The plaintiff took no further action to provide the court with information on how or where to serve

these defendants. Accordingly, they will be dismissed with prejudice rather than have judgment entered in their favor.

Accordingly,

**IT IS ORDERED** that the defendants James Zwicky, Michele Crawford, Mary Jo Pleuss, and Sheri Graeber's motion for summary judgment (Docket #67) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the following defendants be and the same are hereby **DISMISSED with prejudice** as defendants in this action: Michael Murphy and Mrs. Zwicky.

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice** together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 4th day of March, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge